# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### NORTHERN DIVISION

|  |  |  |
|---|---|---|
| **JOHN GEORGE HULL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:17-CV-00015-NCC** |
| | ) | |
| **NANCY A. BERRYHILL,** | ) | |
| **Deputy Commissioner of Operations,** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of John George Hull ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* and for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 26), Defendant has filed an amended brief in support of the Answer (Doc. 30),[1] and Plaintiff has filed a reply brief in support of the Complaint (Doc. 30). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 12).

## I. PROCEDURAL HISTORY

Plaintiff filed his applications for DIB and SSI on December 15, 2011 and March 14, 2012, respectively (Tr. 110-23). Plaintiff was initially denied on May 31, 2012, and he filed a

---

[1] On November 13, 2017, Defendant filed a brief in support of the answer (Doc. 26). The following day, on November 14, 2017, Defendant filed a Motion for Leave to File Overlength Amended Brief in Support of the Answer and attached an amended brief in support of the answer (Doc. 27). The Court granted Defendant's request and directed the Clerk of Court to file the brief on the record (Doc. 29). As such, the Court will only review Defendant's amended brief in support of the answer.

Request for Hearing before an Administrative Law Judge ("ALJ") on July 20, 2012 (Tr. 51-65, 69-77). After a hearing, by decision dated June 12, 2013, the ALJ found Plaintiff not disabled (Tr. 6-23). On August 11, 2014, the Appeals Council denied Plaintiff's request for review (Tr. 1-4). Upon appeal by Plaintiff to the United States District Court for the Western District of Missouri, by order dated December 4, 2015, the court remanded the case back to the agency for a new administrative hearing (Tr. 410-13). During the pendency of the district court action, Plaintiff filed second applications for DIB and SSI (Tr. 555-67). These applications were also denied on initial review and Plaintiff requested a hearing before an ALJ (Tr. 408-09, 445, 453). His applications were merged with his prior applications and, after a second hearing, by decision dated November 21, 2016, the ALJ found Plaintiff not disabled (Tr. 330-53, 356-85). As such, the ALJ's November 21, 2016 decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015 and that Plaintiff has not engaged in substantial gainful activity since June 30, 2010, the alleged onset date (Tr. 335). The ALJ found Plaintiff has the severe impairments of status post cerebrovascular accident (CVA),[2] chronic obstructive pulmonary disease ("COPD"), depressive disorder, generalized anxiety disorder, and obesity, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 335-37).

After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform a light work[3] with the following limitations (Tr. 338).

[2] A cerebrovascular accident (CVA) is "an imprecise term for a stroke." Stedmans Medical Dictionary 4460 (2014).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in

He can lift and carry 20 pounds occasionally and 10 pounds frequently (*Id.*). He can sit 6 hours in an 8-hour workday (*Id.*). He can stand or walk 6 hours in an 8-hour workday (*Id.*). He can never climb ladders, ropes, or scaffolds and he may not walk on uneven surfaces (*Id.*). He can occasionally climb stairs, balance, stoop, kneel, crouch, and crawl (*Id.*). He can occasionally tolerate extremes of cold and heat and pulmonary irritants (*Id.*). He must avoid all unprotected heights, hazardous machinery, and loud environments (*Id.*). Plaintiff can perform simple, routine, and repetitive tasks requiring no changes in the work setting, and no independent work related decision making (*Id.*). He cannot have any interaction with the public and only occasional interaction with coworkers and supervisors (*Id.*). The ALJ found Plaintiff unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including folding machine operator, shipping weigher, and ticketer (Tr. 343-44). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 345). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the

---

this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b), 404.1567.

claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ."  *Id.*  "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'"  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d).  If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work.  20 C.F.R. §§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to establish his or her RFC.  *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled.").  The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past.  20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work.  20 C.F.R. §§ 416.920(g), 404.1520(g).  At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  *Steed*, 524 F.3d at 874

n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff argues that the ALJ failed to meet her burden at Step 5 when she limited Plaintiff to work which was repetitive but the job of shipping weigher is not identified as repetitive (Doc. 19 at 4-6). Second, Plaintiff generally asserts that the ALJ failed to properly establish his RFC both as to his physical as well as to his mental impairments in light of the ALJ's failure to properly consider the medical opinion evidence of record (*Id.* at 6-14). For the following reasons, the Court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

### A. Step Five: Potential Conflict Regarding VE Testimony

First, Plaintiff argues that the ALJ failed to meet her burden at Step 5 (Doc. 19 at 4). Specifically, Plaintiff asserts that the ALJ limited Plaintiff to work which was repetitive but the job of shipping weigher is not identified as repetitive in the Dictionary of Occupational Titles ("DOT") (*Id.*). Therefore, Plaintiff argues that there is a direct conflict between the DOT and the

vocational expert's testimony and, as such, the vocational expert's testimony cannot constitute substantial evidence upon which that ALJ may rely (Doc. 28 at 4).

In her opinion, the ALJ determined that, in addition to other limitations, Plaintiff is limited to performing simple, routine, and repetitive tasks requiring no changes in the work setting (Tr. 338). The ALJ thereafter determined that while Plaintiff could not return to his past work that there were other jobs that exist in significant numbers in the national economy that Plaintiff can perform, including folding machine operator, shipping weigher, and ticketer (Tr. 343-44). The ALJ also indicated, "[p]ursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles" (Tr. 344). In doing so, the ALJ relied on the testimony of vocational expert Stella Doering ("Ms. Doering") (Tr. 381-85).

During the October 19, 2016 hearing, the ALJ presented Ms. Doering with one hypothetical which included the following limitation: "[Plaintiff] could perform simple, routine, repetitive tasks requiring no changes in the work setting . . ." (Tr. 383). Ms. Doering testified that while Plaintiff could not return to his past work, Plaintiff could perform the jobs of folding machine operator of which there are 43,000 positions available nationally (DOT 20.685-014); shipping weigher of which there are 40,000 positions nationally (DOT 222.387-074); and ticketer of which there are 53,000 positions nationally (DOT 229.587-018) (Tr. 383-84). Prior to presenting Ms. Doering with the hypothetical, the ALJ stated, "I'm going to assume your testimony's based on your knowledge, education, training, and experience and is consistent with the Dictionary of Occupational Titles unless you tell me otherwise" (Tr. 382). Ms. Doering did not indicate that there was any conflict with the positions she identified and the DOT (*See* Tr. 383-84). Plaintiff did not raise any objections to Ms. Doering's testimony at the hearing.

At Step Five of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. To that end, Social Security Ruling 00-4p requires an ALJ who takes testimony from a vocational expert about the requirements of a particular job to determine whether that testimony is consistent with the DOT. Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). The ALJ must ask the VE if there is a conflict. *Id.* If there is an apparent conflict, the ALJ must then "elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." *Id.* at *2-*3. The ALJ must also explain in his decision how she resolved the conflict. *Id.* at *3. Accordingly, "an ALJ cannot rely on expert testimony that conflicts with the job classifications in the [DOT] unless there is evidence in the record to rebut those classifications." *Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 979 (8th Cir. 2003) (citing *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir.1997)).

The Court finds that the ALJ's determination at Step Five is supported by substantial evidence. Although the position of shipping weigher, as described in the DOT, does not include a specific limitation to "repetitive work", this absence does not create an apparent, unresolved conflict with Plaintiff's RFC. DOT #222.387-074.[4] When substantial evidence supports the hypothetical and when there is no conflict between the VE's testimony and the DOT, the articulation requirement of SSR 00-4p does not apply. *Moore v. Astrue*, 623 F.3d 599, 605 (8th Cir. 2010) ("Because substantial evidence supports the ALJ's phrasing of the hypothetical to the vocational expert, and there was no conflict between the vocational expert's testimony and the DOT, the ALJ properly relied on the testimony."); *McCallister v. Astrue*, No. 4:15-CV-792 CAS,

---

[4] U.S. Department of Labor (4th ed. rev.1991). The Social Security Administration takes administrative notice of the DOT. *See* 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1).

2012 WL 4357878, at *9 (E.D. Mo. Sept. 24, 2012) ("There is no conflict here between the VE's testimony and the DOT, because the DOT is silent on the neck limitations for the job."). Regardless, even if the Court to find that there was an apparent conflict not addressed by the ALJ regarding the job of shipping weigher, the Court finds that such an error would be harmless in light of the ALJ's reliance on two other jobs that specifically address, as conceded by the Plaintiff, repetitive work. *See Hakes v. Astrue*, 383 Fed. Appx. 581, 583, 2010 WL 2674420, *1 (8th Cir. July 7, 2010) (unpublished) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1043-44 (9th Cir. 2008)) (Evidence that Plaintiff could perform one job is all that was required to support the ALJ's finding that Plaintiff was not disabled, as long as that job existed in significant numbers in the national economy.) As such, the Court finds that the ALJ posed a proper hypothetical to the VE; and that the ALJ properly relied on the VE's testimony that there was work existing in significant numbers which Plaintiff could perform.

## B. Evaluation of Plaintiff's Subjective Complaints

Next, Plaintiff generally asserts that the ALJ failed to properly establish his RFC both as to his physical as well as to his mental impairments (Doc. 19 at 6-14). The Court will first address the consistency of Plaintiff's complaints with the record as the ALJ's evaluation of Plaintiff's symptoms was essential to the determination of other issues, including Plaintiff's RFC.[5] *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)). In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily

---

[5] As noted by Defendant, Social Security Ruleing 16-3p eliminated the term "credibility" from the analysis of subjective complaints. However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the Court finds that the reasons offered by the ALJ in support of his analysis of Plaintiff's subjective complaints are based on substantial evidence.

First, the ALJ reviewed the objective medical evidence regarding Plaintiff's neurological issues (Tr. 339). Specifically, the ALJ indicated that "[t]he objective medical evidence regarding Plaintiff's neurological issues is quite scarce" (*Id.*). Indeed, as noted by the ALJ, while the medical records indicate that Plaintiff reported having a heatstroke in June 2010, there is no record of treatment or hospitalization related to this event (Tr. 231, 266, 339, 778). Further, Plaintiff reported suffering a stroke in 2008 but continued to work from 2008 through mid-2010 (Tr. 339). Plaintiff sought treatment from a neurologist twice in December 2010 and the neurologist indicated relatively normal findings but, since those visits, Plaintiff has not followed up with that provider or any other neurologist (Tr. 231-43, 339). To the extent that he has sought treatment for his headaches specifically, Plaintiff has "periodically complained of headaches to his primary care providers" (Tr. 339). The ALJ also found that any treatment for these

neurological conditions was relatively conservative in nature (*Id.*). For example, the ALJ indicated that Plaintiff has not been on any medication for his headaches since 2011 (Tr. 339, 778). Indeed, Plaintiff testified that his provider did not prescribe, nor had he sought, treatment for the headaches (Tr. 364). The ALJ further noted that Plaintiff has not required imagining studies of the brain after 2010, Botox injections, occipital nerve blocks, or frequent visits to the emergency room (Tr. 339). An ALJ may properly consider Plaintiff's conservative and limited treatment history in her determination of a plaintiff's credibility. *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2012) (noting that the ALJ properly considered that the claimant was seen "relatively infrequently for his impairments despite his allegations of disabling symptoms"); *Casey v. Astrue*, 503 F.3d 687, 693 (8th Cir. 2007) (noting that the claimant sought treatment "far less frequently than one would expect based on the [symptoms] that [he] alleged").

To the extent Plaintiff suggests that he did not receive medical care because he did not have insurance (Doc. 28 at 3), in some circumstances, failure to seek medical treatment based on inadequate financial resources may explain a plaintiff's failure. *See Johnson v. Bowen*, 866 F.2d 274, 275 (8th Cir. 1989). In this matter, however, the record does not reflect that Plaintiff sought treatment offered to indigents. *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (holding that, despite a plaintiff's argument that he was unable to afford prescription pain medication, an ALJ may discredit complaints of disabling pain where there is no evidence that the claimant sought treatment available to indigents). Also, although Plaintiff received medication samples on at least three occasions and one physician indicated a switch in medication due to Plaintiff's inability to afford it, there is also no evidence that Plaintiff's doctors recommended more aggressive treatment than he received or that he had to forego any treatment options based on a financial inability to pay (Tr. 272, 273, 296, 322). *See Goff*, 421 F.3d at 793 (finding it

significant that the record did not show a claimant was denied treatment or that she was not provided with alternative, less expensive treatments when needed); *Harris*, 356 F.3d at 930; *Johnson*, 866 F.2d at 275 (ALJ properly considered that claimant made no effort to inform her doctors of her financial issues or to take advantage of any available medical assistance programs).

Further, the ALJ determined that when Plaintiff did receive treatment for his neurological conditions in December 2010 with a neurologist, the neurologist observed "normal clinical findings" (Tr. 231-43, 339). Specifically, the neurologist noted "intact cranial nerves, normal muscle strength and sensation, normal memory, a normal gait, and no focal deficits" (Tr. 237, 243, 339). Further, objective testing was also relatively normal; an MRI of the brain showed focal atherosclerotic changes of the proximal left internal carotid artery, an old left capsular hemorrhage (Tr. 239, 248, 339). The ALJ also indicated that notes from a consultative examination in April 2016 similarly indicated relatively normal findings including a steady gait, intact cranial nerves, good coordination, normal sensation and reflexes, normal strength throughout, normal memory and concentration, and negative straight leg raises (Tr. 340, 720-32).

Second, the ALJ reviewed the objective evidence regarding Plaintiff's mental health, finding it "routine and conservative, consisting of psychiatric medication . . . prescribed by primary care practitioners" (Tr. 340). Specifically, the ALJ indicated that Plaintiff was not referred to either a psychiatrist or therapist and that he did not have any psychiatric hospitalizations (Tr. 340). The fact that Plaintiff did not seek aggressive treatment from a mental health professional was a proper consideration. *See Partee v. Astrue*, 638 F.3d 860, 864 (8th Cir. 2011) (holding that the failure to seek mental treatment is a relevant consideration when evaluating a claimant's mental impairment); *Kirby v. Astrue*, 500 F.3d 705, 708-09 (8th Cir.

2007) (affirming ALJ's finding that claimant did not suffer significant impairment due to psychiatric illness when claimant had never had any formal treatment by psychiatrist, psychologist, or other mental health professional on a long-term basis); *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (affirming the ALJ's conclusion that mental impairments were not disabling when there was no evidence "of ongoing counseling of psychiatric treatment or of deterioration of change in [claimant's] mental capabilities").  Indeed, as noted by the ALJ, treatment notes regarding Plaintiff's mental health treatment have been largely normal (Tr. 340). For example, his primary care provider prescribed him medication for his depression and anxiety and noted that Plaintiff generally appeared to be "doing well from a mental standpoint" (Tr. 271, 798).  Further, one of the consultative examiners recommended cognitive behavioral therapy and indicated that "[i]t is reasonable to expect moderate to substantial improvement in the foreseeable future, if treatment recommendations are followed" (Tr. 781).

Third, the ALJ found Plaintiff's "extensive" activities of daily living to be inconsistent with his allegations of debilitating impairments (Tr. 341).  For example, as noted by the ALJ, Plaintiff reported that: he lives with and cares for his teenage daughter, is independent in self-care, drives a car, goes grocery shopping, takes care of several cats and dogs, prepares meals, does dishes and laundry, does household cleaning, runs a wood splitter handle to cut wood, loads up to 15 pounds of wood into a truck, takes walks during the day, repairs household items, works with small engines, and mows his one-acre lawn with a riding mower (Tr. 132, 144-54, 341, 361, 365-68, 381, 778).  Indeed, treatment notes in his medical records support this level of activity. *See, e.g.*, Tr. 663 (ran a piece of wire under his fingernail), 718 ("Patient was grinding some paint off some metal Saturday . . . ."), 732 ("had no difficulty donning and doffing his shoes or cuffing the pant legs of his jeans when requested and was noted to have well-formed calluses on

both hands"). *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) ("[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding [his] activities of daily living also raised legitimate concerns about [his] credibility.").

Fourth, the ALJ also indicated that one consultative examiner noted that Plaintiff was "overemphasizing symptomology" (Tr. 340, 677). An ALJ may properly discredit Plaintiff's subjective complaints when an examiner indicates that Plaintiff was exaggerating his symptoms. *See Baker v. Barnhart*, 457 F.3d 882, 892-93 (8th Cir. 2006) (holding that the ALJ properly discounted the claimant's complaints of pain upon considering reports that the claimant exaggerated his symptoms during an examination) (citing *Clay v. Barnhart*, 417 F.3d 922, 930 n. 2 (8th Cir. 2005) (noting that two psychologists' findings that the claimant was malingering on her IQ tests cast suspicion on the claimant's motivations and credibility); *Jones v. Callahan*, 122 F.3d 1148, 1151-52 (8th Cir. 1997) (holding that a physician's observation of the discrepancies in [the claimant's] appearance in the examining room and those outside when he did not know that he was observed supported an ALJ's finding that the claimant's complaints were not fully credible).

In conclusion, the Court finds the ALJ evaluation of Plaintiff's subjective complaints is based on substantial evidence and is consistent with Regulations and case law.

## C. RFC Determination

The Regulations define RFC as "what [the claimant] can do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including

the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted).

A "claimant's residual functional capacity is a medical question." *Lauer*, 245 F.3d at 704 (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in *Lauer* that "[s]ome medical evidence . . . must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]" 245 F.3d at 704 (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam) and *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). Thus, an ALJ is "required to consider at least some supporting evidence from a professional." *Id. See also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); *Eichelberger*, 390 F.3d at 591. However, there is no requirement that an RFC determination be supported by a specific medical opinion or that an RFC must be linked in each of its components to a specific medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).

As previously discussed, the ALJ found Plaintiff has the residual functional capacity ("RFC") to perform a light work with the following limitations (Tr. 338). He can lift and carry 20 pounds occasionally and 10 pounds frequently (*Id.*). He can sit 6 hours in an 8-hour workday (*Id.*). He can stand or walk 6 hours in an 8-hour workday (*Id.*). He can never climb ladders, ropes, or scaffolds and he may not walk on uneven surfaces (*Id.*). He can occasionally climb stairs, balance, stoop, kneel, crouch, and crawl (*Id.*). He can occasionally tolerate extremes of cold and heat and pulmonary irritants (*Id.*). He must avoid all unprotected heights, hazardous machinery, and loud environments (*Id.*). Plaintiff can perform simple, routine, and repetitive tasks requiring no changes in the work setting, and no independent work related decision making (*Id.*). He cannot have any interaction with the public and only occasional interaction with coworkers and supervisors (*Id.*).

The Court finds that the ALJ's RFC determination was based on substantial evidence. Specifically, as addressed in significant detail above, the ALJ properly addressed the consistency of Plaintiff's subjective complaints and in doing so, conducted a complete and detailed analysis of Plaintiff's medical record, his activities of daily living, and his other inconsistent statements. The ALJ additionally properly addressed the extensive medical opinion evidence of record.

First, the ALJ considered the opinion of Dr. Brooke J.D. Preylo, Psy.D. ("Dr. Preylo"), a clinical psychologist and consultative examiner, affording her opinion "significant weight" (Tr. 341, 777-81). On August 18, 2011, Dr. Preylo completed a psychological consultative examination in which she diagnosed Plaintiff with generalized anxiety disorder and assigned him a GAF[6] score of 57 (Tr. 780). In her medical source statement, Dr. Preylo opined that Plaintiff

_____

[6] Global assessment of functioning (GAF) is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 32-34 (4th ed. rev. 2000). Expressed in terms of degree of severity of symptoms or functional impairment,

"is able to understand and remember complex instructions during a normal workday; can concentrate and persist on moderately complex tasks; demonstrates the capacity to interact in moderate contact social situations involving the general public; demonstrates the capacity to interact in high contact involving supervisors and co-workers; is able to adapt to a moderately demanding or complex environment; and is capable of managing funds independently" (*Id.*). The ALJ found Dr. Preylo's opinion to be consistent with the clinical findings and Plaintiff's conservative mental health treatment (Tr. 341). *Krogmeier*, 294 F.3d at 1023. *See also* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion"). However, the ALJ limited Plaintiff further than as suggested by Dr. Preylo, "to just simple, routine, repetitive tasks," in light of the overall record, including Plaintiff's own testimony regarding his problems with confusion and memory (Tr. 341).

Next, the ALJ reviewed the opinion of Michael Schwartz, Ph.D. ("Dr. Schwartz"), a psychologist and consultative examiner, affording his opinion "very little weight" (Tr. 308-10, 341). On May 22, 2012, Dr. Schwartz issued a report based on his consultative examination of Plaintiff (Tr. 308-10). In his report, Dr. Schwartz diagnosed Plaintiff with dementia, major depression of a single episode and of mild intensity and assigns Plaintiff a GAF score of 40 (Tr. 309-10). Dr. Schwartz also reported his findings from the administration of the Wechsler Memory Scale-IV (WMS-IV) to Plaintiff (Tr. 309). Specifically, based on his scores of a 51 for auditory memory and a 46 for immediate memory, Dr. Schwartz opined that Plaintiff has a

---

GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. *Id.* at 32.

severe memory impairment (*Id.*). The ALJ found Dr. Schwartz's opinion to be inconsistent with the overall medical evidence (Tr. 341). As noted by the ALJ, after the completion of the examination, state agency psychological consultant Keith Allen, Ph.D. ("Dr. Allen") contacted Dr. Schwartz regarding the low memory score (Tr. 314, 341). Dr. Schwartz indicated to Dr. Allen that the score was inconsistent with other evidence of record and therefore "not valid, nor reliable" (Tr. 314, 341). The ALJ found it significant that in 2016, Plaintiff took the WMS-IV again with Dr. Jonathan Rosenboom, Psy.D. ("Dr. Rosenboom"), a psychologist and consultative examiner, and, at that time, Plaintiff's memory index scores were significantly higher than before, with an average index score of 73, "a result that fell into the borderline range" (Tr. 341, 744-45).

The ALJ also considered Dr. Rosenboom's opinion regarding Plaintiff's neurological limitations (Tr. 341, 737-746). In conjunction with the memory testing mentioned above, Dr. Rosenboom opined that Plaintiff's "ability to understand, remember, and carry out complex instructions is mildly impaired"; and his "ability to respond appropriately to work supervisors, co-workers and work stressors is markedly impaired" (Tr. 745). The ALJ found Dr. Rosenboom's opinion that Plaintiff is markedly limited in social functioning not to be supported by his own clinical findings (Tr. 341). Specifically, the ALJ noted that Dr. Rosenboom indicated only a "moderately dysphoric mood" (Tr. 341, 743). The ALJ also found the opinion inconsistent with the medical evidence as a whole (Tr. 341). Indeed, as addressed in more detail above, Plaintiff received medication for his depression and anxiety from his primary care provider and appeared to be doing well when on it (Tr. 271, 798). Further, the ALJ highlighted the inconsistency of Plaintiff's reported activities of daily living regarding his social interaction; "[Plaintiff] himself reported that he shops in stores, spends time with his neighbors, spends time

with others, goes to church, and has no problem getting along with most people" (Tr. 132, 144-54, 341, 361, 365-68, 381, 778).

The ALJ further reviewed the opinion of John Keough ("Mr. Keough"), a psychologist and consultative examiner, affording his opinion "significant weight" (Tr. 342, 676-78). After a consultative exam of Plaintiff on February 12, 2015, Mr. Keough issued a report in which he found Plaintiff's ability to understand and follow instructions to be unimpaired (Tr. 678). Mr. Keough further opined that in a low stress/low demand environment Plaintiff would be able to sustain concentration and to be persistent in tasks and maintain an adequate pace in productive activity (*Id.*). The ALJ found Mr. Keough's opinion to be internally consistent with the consultative examiner's routine mental status findings and specifically noted Plaintiff's appropriate affect responses and mild to moderate depression and anxiety (Tr. 342, 677-78). The ALJ also found the opinion to be consistent with the conservative mental health treatment and lack of psychiatric hospitalizations (Tr. 342). The ALJ additionally noted that mental problems were not the focus of Plaintiff's testimony or allegations (Tr. 342).

The ALJ similarly afforded "significant weight" to two state agency psychological consultants, Keith Allen, Ph.D. ("Dr. Allen") and Raphael Smith, Psy. D. ("Dr. Smith") (Tr. 51-57, 342, 434-39). In Dr. Allen's May 30, 2012 case analysis, he opined that Plaintiff "appears capable of performing at least simple, repetitive tasks as physically able" (Tr. 56). Similarly, in Dr. Smith's February 25, 2015 case analysis, he opined Plaintiff "remains capable of performing less demanding work with limitations as set for in the [Mental RFC]" (Tr. 437). In his mental RFC, Dr. Smith generally found Plaintiff not significantly limited except in the following areas where he found Plaintiff to be moderately limited: the ability to maintain attention and concentration for extended periods; and the ability to work in coordination with or in proximity

to others without being distracted by them; the ability to interact appropriately with the general

public (Tr. 438-39).  The ALJ found these opinions to be supported by the objective medical

evidence and again noted Plaintiff's conservative treatment history and routine mental status

examinations (Tr. 342).

The ALJ also afforded state agency medical consultant Denise Trowbridge, M.D. ("Dr.

Trowbridge"), an oncologist,[7] "great weight" (Tr. 58-60, 342).  In her May 31, 2012 physical

residual functional capacity assessment, Dr. Trowbridge opined that Plaintiff could occasionally

lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk about 6

hours in an 8-hour workday; and sit about 6 hours in an 8-hour workday (Tr. 58-59).  Dr.

Trowbridge further opined that Plaintiff could frequently climb ramps/stairs; never climb

ladders, ropes or scaffolds; occasionally balance; occasionally stoop; occasionally kneel;

occasionally crouch; and occasionally crawl (Tr. 59).  Dr. Trowbridge also indicated that

Plaintiff would require several environmental limitations including avoiding concentrated

exposure to extreme cold; extreme heat; noise, fumes, odors, dusts, gases, poor ventilation; and

avoiding all exposure to hazards such as machinery and heights (Tr. 60).  Dr. Trowbridge

concluded that Plaintiff "could continue with light work while pursuing medical care" (*Id.*).  The

ALJ found the opinion consistent with the "benign physical examinations" (Tr. 342).  In doing

so, the ALJ specifically highlighted neurological findings from December 2010 and Plaintiff's

---

[7] Dr. Trowbridge's medical specialty code is listed as a 27 which corresponds with the field of oncology.  Program Operations Manual System (POMS), DI 24501.004 B.  Plaintiff asserts that Dr. Trowbridge is not an oncologist but, instead a radiologist and directs the Court to Dr. Trowbridge's healthgrades website (*See* Doc. 19 at 7).  Plaintiff asserts that as a radiologist Dr. Trowbridge is unqualified to address Plaintiff's physical impairments (*Id.*).  However, whether Dr. Trowbridge is an oncologist, a radiologist, or, as she appears to actually be, a radiation oncologist, a subspecialty of oncology, Plaintiff's argument is without merit as Dr. Trowbridge is an M.D. and, as such, is qualified to address Plaintiff's physical impairment.  Regardless, as addressed throughout, the ALJ reviewed and relied on multiple medical opinions and the complete medical record in formulating Plaintiff's RFC.

generally routine treatment for his various health conditions including no overnight hospitalizations (Tr. 342). The ALJ also indicated that Dr. Trowbridge supported her opinion with "specific and persuasive references to the medical evidence" (Tr. 342). For example, Dr. Trowbridge indicated that Plaintiff is limited by poorly controlled hypertension and chronic lung disease with mild polycythemia; Plaintiff has a history of prior cerebrovascular accident/heat exhaustion; Plaintiff reports not feeling well, throbbing headaches and the inability to sweat; and Plaintiff has stable mild thrombocytopenia (Tr. 59, 194, 197, 199, 205-208, 216, 231, 239, 258, 266, 274). However, the ALJ noted that she included additional nonexertional limitations in the RFC to account for Plaintiff's more recent medical history including his diagnosis of COPD (Tr. 342).

The ALJ further considered the opinion of Dr. Thomas Cuevas, M.D. ("Dr. Cuevas"), an internal medicine specialist and consultative examiner, affording his assessment "little weight" (Tr. 342, 720-36). After conducting a consultative exam of Plaintiff on April 23, 2016, Dr. Cuevas issued a range of motion exam form and associated physical medical source statement (Tr. 720-36). Dr. Cuevas indicated that Plaintiff displayed full range of motion in all areas except slight reductions in his hip abduction, cervical spine, and lumbar spine (Tr. 721). Dr. Cuevas opined that Plaintiff had no restriction in his ability to lift or carry, or his ability to sit, stand or walk (Tr. 722-23). Of note, Dr. Cuevas indicated that Plaintiff would only be able to reach overhead occasionally and would be somewhat limited in his postural activities due to "reported dizziness" (Tr. 724-25). The ALJ found Dr. Cuevas' opinion to be less limiting than that what was supported by the record, noting Plaintiff's severe physical impairments warrant limitation to light work (Tr. 342). The ALJ also determined "there is no clinical justification for the reaching restriction" in light of Dr. Cuevas' normal shoulder range of motion and strength

findings (Tr. 342). The ALJ further found the opinion inconsistent with Plaintiff's reported ability to chop wood (Tr. 342, 366-67).

The ALJ also afforded the opinion of Kelly Schwager, NP-C[8] ("Ms. Schwager"), Plaintiff's primary care provider, "very little weight" (Tr. 342, 835-37). On October 18, 2016, Ms. Schwager completed a physician's residual functional capacity questionnaire in which she indicated that Plaintiff would be limited to lifting less than 10 pounds frequently and 25 pounds at one time (Tr. 835). Ms. Schwager opined that Plaintiff could sit for 4 hours at one time and in an 8-hour workday, could walk for less than an hour at one time and for 2 hours in an 8 hour workday, and would need to lie down for less than an hour a day during an 8-hour workday (Tr. 835). Ms. Schwager did not indicate any restriction in Plaintiff's ability to use his hands, legs, and feet (*Id.*). Ms. Schwager opined that Plaintiff's pain is frequently debilitating and that she believes his complaints of pain although there is no objective evidence demonstrating a condition which could reasonably be expected to give rise to Plaintiff's degree of pain (Tr. 836). Ms. Schwager further opined that Plaintiff would be absent from work about twice a month (*Id.*). The ALJ found these "wholly disabling limitations" not to have support in Ms. Schwager's treatment notes which, as correctly noted by the ALJ, show "just routine treatment for various conditions" and do not show "significantly abnormal examination findings of any sort" (Tr. 342). For example, Plaintiff presented after getting a piece of wire or wood beneath the nail on his right index finger and continued to follow up with the office after his fingernail was removed (Tr. 657-664). Further, the ALJ found that no objective medical evidence support Ms. Schwager's restriction on Plaintiff's use of his hands and that such a restriction is inconsistent with the reports regarding Plaintiff's ability to chop wood (Tr. 342, 366-67).

---

[8] Nurse Practitioner, Certified.

Lastly, the ALJ reviewed the opinion of Greg Sensenich, M.D. ("Dr. Sensenich"), Plaintiff's primary care provider at the time, affording Dr. Sensenich's opinion "little weight" (Tr. 274, 342). On November 7, 2011, in a treatment note, Dr. Sensenich opined, "the patient continues to have fatigue and fluctuations in blood pressure, and is unable to work at this time" (Tr. 274). The ALJ found the note not supported by the objective medical evidence (Tr. 342-43). Specifically, the ALJ noted that by August 2011, Plaintiff's hypertension was "controlled" and has since been adequately managed with medication (Tr. 295, 343, 759). Indeed, Plaintiff testified that his regular doctor's "kind of got my blood pressure under control" (Tr. 368). Regardless, a physician's opinion that a claimant is incapable of gainful employment is often not entitled to significant weight. *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1116 (8th Cir. 2008)).

To the extent that Plaintiff asserts that the components of the ALJ's RFC determination are not directly linked to specific medical opinions, an "ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the [Palintiff's] physicians." *Martise*, 641 F.3d at 927. Therefore, in light of the ALJ's detailed review of the 11 medical opinions of record, the Court finds that the ALJ properly considered the opinion evidence of record in formulating Plaintiff's RFC.

Second, the ALJ also properly considered Plaintiff's GAF scores, affording them little weight (Tr. 310, 343, 780). In her psychological consultative examination report dated August 29, 2011, Dr. Preylo assigned Plaintiff a GAF score of 57 (Tr. 780). Similarly, Dr. Schwartz issued a report based on the May 22, 2012 consultative examination of Plaintiff in which he assigned Plaintiff a GAF score of 40 (Tr. 310). The ALJ found that "GAF scores have limited value as opinion evidence as they are essentially snapshot estimates of an individual's level of

functioning on the day of the assessment" (Tr. 343). Instead, the ALJ indicated that she relied on the mental status examinations and other narrative clinical observations in the record. *See Jones v. Astrue*, 619 F.3d 963, 974 (8th Cir. 2010) (ALJ may afford greater weight to medical evidence and testimony than to GAF scores). The ALJ explicitly addressed Plaintiff's GAF scores with their associated medical opinions, finding the score of 40 and the opinion of Dr. Schwartz entitled to "very little weight" and finding the score of 57 and Dr. Preylo's opinion entitled to "significant weight" in light of their inconsistency and consistency, respectively (Tr. 341). Further, the ALJ limited Plaintiff to simple, routine, repetitive tasks, finding him to be more significantly impaired than as indicated by Dr. Preylo (Tr. 341). *See also Goff*, 421 F.3d at 789, 791, 793 (affirming where court held GAF of 58 was inconsistent with doctor's opinion that claimant suffered from extreme limitations; GAF scores of 51-60 supported ALJ's limitation to simple, routine, repetitive work).

Third, the ALJ properly considered the third party function reports of Plaintiff's sister, affording them "some weight" (Tr. 343). Plaintiff's sister submitted two third party function reports, one dated December 17, 2011 and the second dated October 20, 2014 (Tr. 132-39, 580-87). As the ALJ noted, Plaintiff's sister indicated that Plaintiff "does dishes and laundry; prepares meals[;] uses a riding mower[;] and goes grocery shopping" (Tr. 134-35, 343, 582-83). As such, the ALJ found the third party function reports indicative of Plaintiff's daily activities but not dispositive of disability both because they were cumulative of the Plaintiff's own subjective complaints and they were not wholly consistent with the overall treatment records and examination findings (Tr. 343). Indeed, Plaintiff's sister indicates that Plaintiff likes to work on small engines (Tr. 132-33, 584). "Where an ALJ properly discredits a claimant's complaints of disabling symptoms, [she] is equally empowered to reject the cumulative testimony of the

claimant's relatives and acquaintances." *Chapman v. Berryhill*, No. 4:16 CV 802 ACL, 2017 WL 4163921, at *6 (E.D. Mo. Sept. 20, 2017) (citing *Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998)).

Fourth, the ALJ considered the combined effects of Plaintiff's obesity with his other impairments (Tr. 340). The ALJ is required by the procedures in SSR 02-1p to consider obesity's effect on other impairments. *See generally* SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002). Here, the ALJ found Plaintiff's obesity to be a severe impairment (Tr. 335). Specifically, the ALJ noted that, with a body mass index of 33.8, Plaintiff is obese and as such his obesity can cause limitations in function including sitting, standing, walking lifting, carrying, pushing, pulling, climbing, balance, stooping and crouching (Tr. 340). While the ALJ did not explicitly indicate how Plaintiff's obesity in combination with his other impairments limited him, an ALJ is not required to include a specific discussion of obesity when, as is the case here, the ALJ clearly considered the impairment and included associated limitations in her RFC determination and then properly included those physical limitations in her hypothetical to the vocational expert. For example, the ALJ restricted Plaintiff in the amount he can lift, sit, stand or walk, climb ladders, ropes or scaffolds, walk on uneven surfaces, climb stairs, balance, stoop, kneel, crouch, and crawl (Tr. 338). Then the ALJ adequately described Plaintiff's physical limitations and restrictions in her hypothetical to the vocational expert (Tr. 383). *See Bullard v. Colvin*, No. 4:15 CV 701 ACL, 2016 WL 5390950, at *6 (E.D. Mo. Sept. 27, 2016). Regardless, Plaintiff fails to indicate how his RFC would be different and the record does not support any additional limitations. *See McNamara v. Astrue*, 590 F.3d 607, 612 (8th Cir. 2010) (finding an ALJ's failure to include a specific discussion regarding obesity was not erroneous when neither the medical records nor the claimant's testimony demonstrated that additional limitations resulted

from it); *Harvey v. Berryhill,* No. 6:16-CV-06080, 2017 WL 3025922, at *3 (W.D. Ark. July 17, 2017) (upholding the ALJ's determination on nearly identical language).

Finally, to the extent the Plaintiff identifies records that support Plaintiff's allegations, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome." *McNamara*, 590 F.3d at 610.

In conclusion, the Court finds that the ALJ's RFC determination is consistent with the relevant evidence of record including the objective medical evidence, the observations of medical providers, and diagnostic test results, as well as the evaluation of Plaintiff's subjective complaints; that the ALJ's RFC determination is based on substantial evidence; and that Plaintiff's arguments to the contrary are without merit.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 20th day of September, 2018.

 /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE